IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| UNITED STATES OF AMERICA | : |                              |
|                          | : |                              |
| v.                       | : | Criminal Case No. DKC 13-0668|
|                          | : |                              |
| ERIC GOODALL             | : |                              |
|                          | : |                              |

**MEMORANDUM OPINION**

Eric Goodall filed motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19. (ECF Nos. 98; 102)[1]. He is currently serving a 156-month sentence at FCI Ft. Dix as a result of his convictions for possession and attempt to possess with intent to distribute PCP, and possession of ammunition by a convicted felon. Mr. Goodall has been incarcerated for 80 months, which counsel asserts is 59% of the time he would be required to spend in the custody of the Bureau of Prisons ("BOP"). According to the BOP website, his projected release date is January 16, 2025. For the following reasons, the motion for compassionate release will be denied.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c) (2018). This

---

[1] The initial motion was filed pro se. The motions to seal (ECF Nos. 103; 105; 107) are GRANTED. The personal medical and other information should remain private, except as recited herein.

general rule is subject to certain exceptions, including the compassionate release provision, which allows the BOP to seek a modification of a prisoner's sentence. *See id.* § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person

> or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

> Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
> U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
>> 1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>>
>> (A) Medical Condition of the Defendant.—
>>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>> **(I) suffering from a serious physical or medical condition**,

3

> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). The Attorney General issued a second memorandum to Carvajal on April

4

> 3, 2020, finding "the requisite emergency . . . ."
> *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3
> memorandum "had the effect of expanding the [BOP's]
> authority to grant home confinement to any inmate...."
> *Id.*
>
> The Department of Justice ("DOJ") has recognized
> the unique risks posed to inmates and BOP employees from
> COVID-19. The DOJ recently adopted the position that an
> inmate who presents with one of the risk factors
> identified by the CDC should be considered as having an
> "extraordinary and compelling reason" warranting a
> sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt.
> n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at *3–4 (D.Md. June 17, 2020) (footnote omitted).

Mr. Goodall argues that he meets the "extraordinary and compelling reasons" because his underlying medical conditions (type 2 diabetes and atherosclerosis) and age (49) make him especially vulnerable to COVID-19. He asserts that he does not pose a danger to the community, and the § 3553(a) factors warrant release. The Government opposes his motion. The Government disputes Mr. Goodall's assertion that he has exhausted administrative remedies, because the institution did not interpret his request as one for compassionate release because it referred to the CARES Act and requested to be placed on home confinement. In addition, it argues that he has failed to show that he is no longer a danger to the community and that the § 3553(a) factors counsel against release.

The requirement to exhaust administrative remedies requires, first, that the prisoner direct a request to the warden to bring

a motion on his behalf.  Whether a question of subject matter jurisdictional or mandatory claims processing, it must be satisfied, at least when raised by the Government.  *See, United States v. Alam*, 960 F.3d 831, 832-35 (6th Cir. 2020).

Mr. Goodall's request for release addressed to the warden said, in part, that he was requesting "compassionate release pursuant to the cares act . . . to home confinement.  REASON: I suffer from diabetes, an under[lying] illness in the C-VID 19 pandemic."  Some courts have concluded that a request that refers to the Cares Act, rather than to compassionate release, can suffice, at least when the request refers to COVID-19 and/or a prisoner's underlying medical conditions.  *See, e.g., United States v. Murray*, 2020 WL 4000858 *3 (E.D. La. July 15, 2020); *United States v. Carr*, 2020 WL 2847633 *3 (W.D.Va. June 2, 2020).  This request does both.  Thus, Mr. Goodall's request will be deemed sufficient.

Mr. Goodall explains why his medical conditions are risk factors and states that 43 inmates and 5 staff members have tested positive at Ft. Dix, where he resides.  He argues that he was convicted of a non-violent drug crime that did not involve weapons.  His prior criminal history, he asserts, was when he was much younger and "in a vastly different stage of his life."  He concludes that the drug crimes in this case were aberrational.  He also asserts that he is not the same man who was sentenced in 2015,

6

having maintained employment while incarcerated and paid off all of his financial obligations.  He has completed drug education and taken other courses.  His family has been impacted by his incarceration, and that responsibility in turn has affected Mr. Goodall.  He continues to enjoy strong family and community support.  He claims to have a robust plan for release, residing with his wife and son.  When safe, he intends to work as a property manager.

Although the Government concedes that his medical conditions constitute "extraordinary and compelling reasons" in light of COVID-19 to warrant consideration for release, it nevertheless opposes release.  It points out that he is only 49 years old, is receiving medical care, and there are relatively few cases at Ft. Dix.  He has been subject to discipline, even recently.  His letters of support reflect perspectives expressed also at the time of sentencing.  It recounts the facts of this offense, which involved parcels containing PCP mailed to addresses controlled by Mr. Goodall and asserts that the amount of PCP was "astounding." Significant amounts of cash were also seized, and he purchased a Porsche and had gambling receipts.  The Government also points to his extensive criminal history resulting in Criminal History V and argues that his record demonstrates that release would present a danger and that the goals of sentencing would not be served by immediate release.

7

Counsel for Mr. Goodall counters that the record doesn't reflect the purity of the substance, and thus how to characterize dosage units. He also explains that he has been a lifelong gambler and the gambling receipts are not indicative of money laundering of drug proceeds.

The court assumes that compassionate release is available even if an inmate has not yet served a mandatory minimum sentence. Nevertheless, the presence of such a sentence is indicative of the seriousness of the offense and ought to be considered when determining whether the goals of punishment and deterrence have been fulfilled. The distribution of PCP, in significant quantities no matter how calculated, was a serious offense. The circumstances demonstrate that it was no momentary lapse of judgment, but had to have been a calculated endeavor. Judge Titus discussed the reasons for selecting the sentence in the middle of the applicable guideline range and stated emphatically that 140 months would not be sufficient. The advent of the COVID-19 public health emergency does not offset those findings sufficiently to justify release at this time.

Accordingly, the motion for compassionate release will be DENIED.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge